## CASES WHICH ARE EXEMPT FROM OPERATION OF THE NEW JURY LAW.

### Common Pleas Court of Franklin County.

THE CITIZENS SAVINGS & TRUST CO. v. GIBSON-SPENCE COAL CO.

Decided, October, 1914.

*Verdict—By Three-Fourths of the Jury—Application of the Act Relating Thereto—Recent Holding by the Supreme Court Distinguished—Claim That the Notes Sued on Were Given for a Consideration Which Failed—Not a Defense, When—Section 11455 as Amended.*

1. Under the General Code 26, providing that when an amendment to a statute relates to the remedy it shall not affect causes of action existing at the time of such amendment unless otherwise expressly provided in the amending act, the provisions of amended Section 11455 authorizing a verdict upon concurrence of three-fourths of the jury, does not apply to a cause of action stated in an action commenced after May 14, 1913, the time the amendment became operative, when the cause or causes of action accrued long prior to that date and were existing at the time of such amendment which contained no language expressly making it applicable to such existing causes. (*Elder* v. *Shoffstal*, decided by Supreme Court, June 16, 1914, 89 Ohio State, affirming 17 C.C.[N.S.], 182, distinguished; second paragraph of syllabus not applicable.)

2. A claim that notes were given in consideration of future delivery of coal which fails, is not a defense to an action by a bank which purchases the same before maturity without notice of such consideration or engagement between the parties.

*D. H. Armstrong* and *A. C. Harvey,* for plaintiff.
*M. L. Bigger,* contra.

KINKEAD, J.,

This case has been tried twice. The action is to recover $1,177.96 on two promissory notes. The defense was that the plaintiff took the notes with knowledge that they were given as advance payments for coal to be delivered in the future, the facts showing that the payee was unable to deliver the coal. In the

first trial a non-suit was ordered because it was not shown that the plaintiff was not a *bona fide* holder of the note sued upon.

A new trial was granted because the court entertained a suspicion from the evidence that all facts and circumstances had not been disclosed in respect to the question whether the bank had notice of the equities. The new trial was granted also out of an abundance of precaution on the ground that it might properly be a question for the jury to draw an inference from the circumstances the fact of such knowledge.

On second trial the evidence developed the facts and circumstances much more fully, shedding all the possible light upon the question whether the bank was chargeable with knowledge of the claims of defendants. The verdict of the jury was that it was not, the finding being for the plaintiff.

On motion for new trial it strongly urged that error was committed in not charging the jury that it could render a verdict by a three-fourths vote. It is also claimed that the court erred in its charge to the jury.

The action was commenced July. 8, 1913.

The first cause of action *accrued* and was *existing* April 10, 1913. The second cause of action *accrued* and was *existing* March 26, 1913.

It is urged that the case of *Elder* v. *Shoffstall,* decided by the Supreme Court June 16, 1914, OHIO LAW REPORTER, June 29, 1914, requires a reversal of the action of the court because the jury was required to render a unanimous verdict.

The course pursued in this case is the one followed by this court in all its branches upon mature reflection and consideration. It is the rule followed generally by the trial courts. The trial courts had long had the benefit of the case above cited as reported by the court of appeals in *Shoffstall* v. *Elder,* 17 C.C. (N.S.), 182. The Supreme Court affirmed the decision, reaching the same conclusion that the amendment to the jury law which became effective May 14, 1914, did not affect actions pending prior to that date. That action was commenced March 21, 1913. It went to trial May 6, 1913, the court charging the jury May 20, 1913. The court applied the amended jury law, the verdict

being rendered by only ten jurors. This action was reversed by the court of appeals because the amended act did not affect pending actions. It followed a rule of the Supreme Court that in construing an amended or repealing act it must be read as though Section 26 was in fact part of the section construed. This rule the Supreme Court reiterates in the opinion in *Elder* v. *Shoffstall, supra* (opinion not published). It was held that there was no express language contained in the amendment which clearly indicated a legislative intent to make the amendment applicable to pending cases, the words "in all civil actions" not being sufficient.

It is not urged that the opinion of the Supreme Court in this case as expressed in the syllabus requires a reversal of the verdict in this case. The language of the 2d syllabus would by its letter seem to sustain such contention. It is as follows:

"This amended section relates to the remedy only and applies to all actions commenced in the common pleas courts of this state on and after the 14th day of May, 1913, regardless of the time when the cause of action arose."

It is respectfully submitted that the second proposition of the above syllabus was beside the actual question involved in that case, which was whether the amendment should apply to a case pending, the trial of which was commenced before the act took effect and which was submitted to the jury after the same went into effect.

To say in that case that the amendment applies to all actions commenced after May 14, 1913, regardless of the time when the cause of action arose, is to undertake to make a rule in a case not before the court, and ignores the latter part of Section 26. It is familiar doctrine that amendatory enactments in some instances may properly be applied to certain remedial rights without infringement thereof. This is because there is no vested right in such remedy.

But the right to a jury trial by unanimous verdict was a common law, constitutional right, of which neither party could be deprived without both constitutional and statutory amend-

ment. The opinion of the Supreme Court in the case cited holds it to be a constitutional right, taking jurisdiction of the case because it involved a constitutional right. The final act in changing this fundamental right did not occur until May 14, 1913.

The constitutional amendment authorizing the amendment was not self executing, but required legislation to make it effective, so that it did not become operative until the date named.

To state that the amendment relates to the *remedy,* and therefore to hold that a verdict shall be rendered in accordance with its provisions in an action commenced after May 14, 1913, regardless of when the cause of action arose, seems with due respect, to be a misconception. At the moment when default occurred on the notes in question, March 26, 1913, a remedial right came into existence in the plaintiff to commence an action in court. The right thus arising was as much a part of the *remedy,* as was the right to submit it to a jury at trial. The right thus springing into existence upon default of defendant was not only a constitutional remedial right at such time, but it was carefully and explicitly guarded and preserved by existing statutory provision, viz.:

"Section 26. Whenever a statute is * * * amended, such * * * amendment shall in no manner affect pending actions, * * * civil * * * *and when the amendment relates to the remedy, it shall not affect pending actions,* * * * *unless so expressed,* * * * *nor shall any* * * * amendment *affect causes of action,* * * * *existing at the time of such amendment* * * * *unless otherwise expressly provided in the amending* * * * *act."*

The Supreme Court states that the amendment relates to, but does not actually hold that it applies the remedy *regardless of the time when the cause of action arose,* because the time when the cause arose was not involved in the case, *supra.* The unpublished opinion of the Supreme Court in *Elder* v. *Shoffstall* has been examined, wherein it is found that the same statement appears as is found in the published syllabus, prop. 2. In all

·other respects the opinions therein contained and herein expressed are consistent. It is clear that the decision of the Supreme Court is not an authority on the question involved in this case, except as the opinions therein found on the questions incidental and leading up to the final one involved are in harmony. Section 26 so plainly provides that the amendment to the jury law *shall not affect causes of action existing at the time of such amendment* unless otherwise expressly provided therein, that the court is bound to conclude that though this action was commenced after May 14, 1913, the causes of action existing at and for some time prior to the amendment becoming effective, there being no language therein expressly providing otherwise, the three-fourths jury law could not be applied in this case without depriving the parties of a constitutional right.

There was then no error in the submission of the case as to the verdict.

On the burden of proof it is contended that under Section 8164 when it is shown that the title to a negotiable instrument is defective, the burden is on the holder to prove that he acquired the title in due course. Plaintiff did prove it received the same in due course. Defendant claimed otherwise and assumed the burden of so proving.

It is claimed that the court ignored the doctrine of *Breman* v. *Burns,* 89 O. S. It was there held that where an officer of a bank is acting for himself as an individual and as manager of a bank in the purchase of a note from himself by the bank, and this action is ratified by the bank, the manager's knowledge as a man is chargeable to the bank. That is not the question here.

The facts are altogether different here. One Thomas was formerly president of the plaintiff. At the time of negotiations of the notes he was a director, but was cashier of a bank in this city. The agreement between the makers of the notes and the payee as to future delivery of coal was made here in Columbus and communicated to Mr. Thomas. Mr. Thomas sent the notes to the bank. Some of the directors knew that Mr. Thomas sent paper to plaintiff bank. But all these matters which the defendant was allowed to go into respecting the mining property

considered with sober mind and mature reflection are far removed from the claim that these notes were given in advance for future payment so far as concerns the bank at the time the notes were discounted. The giving of the notes for future delivery of coal was an independent transaction, occurring long after Thomas was president of the bank and as such managing officer.

The court has been more than liberal to the defendants in this case by giving a new trial, and allowing wide scope in the evidence.

If any errors have occurred it has been on the side of defendant.

The charge was liberal. The question of knowledge of the consideration of the note and of the terms and conditions was submitted to the jury. But it is doubtful whether there was not error in so doing, because on careful thought it is doubtful whether there was anything in all of those matters outside of the primary consideration of the note. But the matters went to the jury and defendants had the judgment of the jury which was against them.

Even if the bank had had knowledge that the promise to deliver coal in the future, which it did not have—under *Bank* v. *Curtis,* 167 N. Y., 194, that would not be a defense, because as there held the consideration for the notes did not fail by reason of the non-delivery thereof, since a promise to deliver is sufficient consideration for the acceptance. And the right of a bank to enforce the liability of the notes discounted would not have been affected by its knowledge that the consideration was a promise to deliver coal in the future, because the notes were discounted for value before maturity and before a breach of the agreement to deliver. A promise to deliver is sufficient consideration for the acceptance. 167 N. Y., 194.

Under all the circumstances appearing in the evidence, without regard even to the verdict, plaintiff is entitled to judgment on the notes. Motion for a new trial is overruled, and judgment may be entered on the verdict.